# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF FLORIDA

NOV 9 2026 PM2:49
FILED - USDC - FLMD - TPA

# TAMPA DIVISION

**JAMELLE TUCKER,**
Plaintiff,

v.
Case No.: 8:26-cv-3407-WFJ-LSG

**CITY OF TAMPA, FLORIDA,**
Defendant.

# AMENDED DRAFT COMPLAINT FOR DISCRIMINATION, RETALIATION, AND VIOLATION OF CIVIL RIGHTS

Plaintiff Jamelle Tucker, proceeding pro se, alleges:

## I. INTRODUCTION

1. This action arises from alleged racial discrimination, religious discrimination, harassment, unequal treatment, and retaliation that Plaintiff experienced while participating in the City of Tampa's Green Team, an environmental program operated in partnership with AmeriCorps and Volunteer Florida.
2. Plaintiff participated in the AmeriCorps State and National program. Plaintiff entered into an AmeriCorps Member Service Agreement and a separate City of Tampa contractor agreement. The City issued Plaintiff a Form 1099. Plaintiff alleges that City personnel exercised supervisory authority over his assignments, working conditions, attendance, and continued participation.

IFP

3. Plaintiff alleges that City personnel subjected him to racially offensive conduct, unequal enforcement of service-hour requirements, exclusion from assignments, and disrespectful treatment of his sincerely held religious beliefs.
4. Plaintiff reported discrimination to AmeriCorps Equal Opportunity Administrator Nailah Allen. Plaintiff alleges that after this report, the tracking of his service hours became more stringent and he was required to remain for full shifts in circumstances where other members were permitted to leave earlier.
5. Plaintiff alleges that the cumulative treatment, including threatened termination, contributed to his resignation effective December 5, 2025.
6. Plaintiff asserts claims under federal and state law to the extent the statutory requirements are met. Plaintiff also relies on the nondiscrimination protections applicable to AmeriCorps participants and the City of Tampa's own written harassment and equal-opportunity policies.

## II. JURISDICTION AND VENUE

7. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims arising under the Constitution and laws of the United States.
8. Plaintiff asserts claims under 42 U.S.C. §§ 1981 and 1983, Title VI, Title VII, and related federal law. Plaintiff invokes supplemental jurisdiction over related state-law claims under 28 U.S.C. § 1367.
9. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391 because the events giving rise to the claims occurred in Tampa, Florida, and Defendant is located in this district.

## III. PARTIES

10. Plaintiff Jamelle Tucker is an individual who participated in the Green Team program in Tampa, Florida during 2025.
11. Defendant City of Tampa is a municipal corporation organized under Florida law. At relevant times, the City operated or participated in the operation of the Green Team program and exercised supervisory and administrative authority over aspects of the program.
12. The City describes the Green Team as a program operated in partnership with AmeriCorps and Volunteer Florida, with members serving alongside City personnel.
13. Plaintiff alleges that the City received, administered, or participated as a recipient or subrecipient in federal financial assistance associated with the Green Team. The precise grant and subrecipient arrangements are within the possession of Defendant and program administrators.

## IV. FACTUAL ALLEGATIONS

## A. Plaintiff's AmeriCorps service and City agreement

14. Plaintiff participated in the City of Tampa Green Team as an AmeriCorps State and National member during approximately September through December 2025.
15. Plaintiff signed an AmeriCorps Member Service Agreement and a separate City of Tampa contractor agreement.
16. The City issued Plaintiff a Form 1099. Plaintiff alleges that City personnel exercised supervisory authority over his work assignments, attendance, service-hour tracking, and continued participation.
17. Plaintiff does not rely solely on the Form 1099 to establish an employment relationship. Plaintiff alleges that the separate City agreement and the actual nature of the City's control are relevant to determining whether a separate contractual or employment relationship existed.
18. Plaintiff recognizes that the City may dispute his employment status based on his AmeriCorps participant classification. Plaintiff pleads employment-based claims in the alternative and also asserts claims that do not depend on employee status.

## B. Unequal enforcement of service-hour requirements

19. Plaintiff understood that full-time AmeriCorps members were required to complete approximately 1,700 service hours during the service term.
20. Plaintiff was subjected to increased scrutiny concerning his progress toward the required service hours and his attendance.
21. Plaintiff alleges that other members were also behind on their service-hour requirements but were not subjected to the same level of corrective scrutiny.
22. Plaintiff specifically identifies Vin Ding, whom Plaintiff identifies as a supervisor, as an individual who was subject to the same AmeriCorps service-hour requirements but was not placed on a corrective plan comparable to the plan or scrutiny imposed on Plaintiff.
23. Plaintiff recalls that Vin Ding took an extended vacation or absence that was longer than the period Plaintiff had planned to be away. Plaintiff also recalls that Vin Ding did not work the same hours as the other members.
24. Plaintiff does not claim to know Vin Ding's precise service-hour total. Plaintiff alleges that, despite the same stated service-hour requirement, Vin Ding was not subjected to the same corrective plan or hour-tracking scrutiny imposed on Plaintiff.
25. Plaintiff further alleges that he was required to remain for full shifts in circumstances where other members were permitted to leave earlier.
26. In particular, at Henry and Ola Pa, Plaintiff worked with Robert and Eliza and was required to remain for the full shift, while other members were allowed to leave earlier.
27. Plaintiff alleges that this differential enforcement was part of a broader pattern in which stricter attendance and service-hour requirements were imposed on him than on other members.
28. Plaintiff alleges that the City and program supervisors did not apply the service-hour requirements consistently and that Plaintiff was singled out for heightened scrutiny.

## C. Exclusion from assignments and opportunities

29. Plaintiff alleges that supervisor Jessica Serre questioned the truthfulness of Plaintiff's résumé and professional experience.
30. Plaintiff alleges that he was not provided assignments and opportunities consistent with his skills and experience, while other members were afforded opportunities to participate in activities and projects.
31. Plaintiff was excluded from or denied meaningful participation in certain activities, including the Great American Teach-In.
32. Plaintiff also sought an opportunity to speak about community gardens but was not afforded that opportunity. The Green Team later participated in community-garden activities.
33. Plaintiff alleges that exclusion from assignments and opportunities limited his ability to demonstrate his experience and obtain professional-development benefits associated with the program.

## D. Racially offensive comments and conduct

34. During the service period, Plaintiff heard or became aware of racially offensive comments made by City personnel, including Jessica Serre and Robert.
35. In a discussion concerning gentrification and an African American community, Plaintiff alleges that City personnel compared members of the community to "roaches."
36. Plaintiff also recalls comments involving chains placed on a tree and statements including "the beast got away" and "torture area for us." Plaintiff understood these comments in the context of the surrounding discussion and conduct to be racially demeaning.
37. Plaintiff alleges that these comments contributed to an environment in which racial stereotypes and disrespect toward African American people were expressed by individuals exercising authority within the City-associated program.
38. Plaintiff alleges that the comments were part of the broader pattern of exclusion, unequal treatment, and hostility he experienced.

## E. Religious discrimination and treatment of Plaintiff's beliefs

39. Plaintiff is a Christian and holds sincerely held religious beliefs.
40. During the Thanksgiving period in 2025, Plaintiff requested to be excused from participating in a Thanksgiving potluck or meal because of his sincerely held religious beliefs.
41. Plaintiff's request was based on his religious understanding of Proverbs 23:1–3 and his personal belief concerning participation in a meal hosted under circumstances that conflicted with his conscience.
42. Plaintiff sought to refrain from the meal while continuing to fulfill his service responsibilities.

43. Plaintiff alleges that his request was met with dismissive and mocking remarks, including statements to the effect of, "if you don't want to be here, we're not going to make you," and, "so I guess that's how we have to do it now, an official meeting then we can eat since some people don't want to be here."
44. Plaintiff alleges that these comments singled him out because of his religious objection and treated his sincerely held beliefs as an inconvenience or source of ridicule.
45. Plaintiff alleges that the City and program supervisors did not engage in a meaningful effort to understand or accommodate his request.

## F. Accusations and disclosure of personal information

46. Plaintiff was accused of taking or misplacing a shovel. Plaintiff alleges that team member Nina later stated that the shovel was in her vehicle.
47. Plaintiff was also accused of taking a storage key. Plaintiff alleges that he had returned the key to the person who had given it to him.
48. Plaintiff alleges that supervisor Jessica Serre discussed Plaintiff's personal background and prior legal issue with other City-associated personnel, including Hailey and Jaime, who then repeated the information to others.
49. Plaintiff alleges that these incidents contributed to a pattern of suspicion, humiliation, and unfavorable treatment.

## G. Report to AmeriCorps and subsequent treatment

50. Plaintiff reported concerns about discrimination to **Nailah Allen, an AmeriCorps Equal Opportunity administrator**.
51. Plaintiff identifies this report as his first report of racial discrimination or unequal treatment to an Equal Opportunity administrator.
52. Plaintiff alleges that after making this report, the tracking of his service hours became more stringent and was not applied equally to all members.
53. Plaintiff alleges that he was required to remain for full shifts while other members were allowed to leave earlier. This occurred, in particular, at Henry and Ola Pa when Plaintiff worked with Robert and Eliza.
54. Plaintiff alleges that the increased scrutiny and unequal enforcement followed his report to the AmeriCorps Equal Opportunity administrator.
55. Plaintiff has not identified any City Human Resources or Employee Relations official who received his report to Nailah Allen. Plaintiff does not allege that City Human Resources or Employee Relations directly received that report.
56. Plaintiff alleges that the sequence of his report and the subsequent increase in scrutiny is relevant to whether the treatment was retaliatory under the AmeriCorps nondiscrimination framework and any other law whose notice and causation requirements are satisfied.
57. Plaintiff was informed by supervisor Jessica Serre that she was preparing to have him terminated and was waiting for a signature.

58. Plaintiff resigned effective December 5, 2025, because he believed he would otherwise be terminated and because the cumulative conditions had become intolerable.
59. Plaintiff alleges that his resignation resulted from the cumulative effects of discriminatory treatment, harassment, exclusion, heightened scrutiny, and threatened termination.

## H. City of Tampa's written equal-opportunity and harassment policy

60. Before the events alleged in this Complaint, the City of Tampa promulgated Executive Order No. 2025-12, dated July 7, 2025, adopting the City of Tampa Personnel Manual. Section B1.1, Equal Opportunity, has an issue date of April 17, 2025.
61. Section B1.1 states that City government will provide equal treatment without regard to race, color, religion, national origin, and other protected characteristics. It directs managers and supervisors to ensure that the policy is fully implemented and enforced.
62. Section B1.1 expressly prohibits harassment based on protected characteristics. It prohibits City employees from directing offensive verbal or physical conduct against an employee, a citizen, or any other person or member of the public based on race, color, religion, national origin, and other protected characteristics.
63. The policy further prohibits conduct that may not meet the legal threshold for a hostile environment but is discriminatory, coercive, intimidating, threatening, or objectively offensive based on protected characteristics.
64. Plaintiff alleges that he was a person serving in a City-associated program and working alongside City employees. Plaintiff alleges that the City exercised supervisory authority over his service and that the City's policy expressly extends its prohibition on protected-class-based offensive conduct beyond its own employees to other persons and members of the public.
65. Plaintiff alleges that the racially offensive comments described above were inconsistent with the City's express prohibition on protected-class-based offensive conduct by City employees toward any other person.
66. The City's policy also establishes reporting and accountability requirements. It requires supervisors who learn of discrimination or retaliation to report it to Employee Relations and requires complaints to be documented and investigated.
67. Plaintiff alleges that the policy is relevant to the City's stated standards, the responsibilities assigned to City supervisors, and the City's administration of a program in which City employees worked alongside AmeriCorps participants.
68. Plaintiff does not allege that the written policy authorized discrimination. Plaintiff alleges that the policy prohibited the conduct described and that its existence is relevant to the City's notice, implementation, supervision, and enforcement practices.

## I. AmeriCorps nondiscrimination protections

69. Plaintiff participated in AmeriCorps State and National, not AmeriCorps VISTA.
70. The Green Team was an AmeriCorps-assisted project operated in partnership with the City and Volunteer Florida.

71. Under 42 U.S.C. § 12635, individuals responsible for operating covered AmeriCorps-assisted projects are subject to nondiscrimination requirements protecting participants, including protections concerning race, color, national origin, and religion.
72. The applicable regulations in 45 C.F.R. Part 1225 establish discrimination complaint procedures for AmeriCorps applicants, candidates, members, and volunteers and address discrimination connected to recruitment, selection, placement, service, and termination.
73. Plaintiff alleges that the conduct described in this Complaint occurred during his placement and service in an AmeriCorps-assisted project and was inconsistent with the nondiscrimination requirements governing that project.
74. Plaintiff identifies these statutory and regulatory protections as relevant to his status as an AmeriCorps participant and the standards applicable to the program. Plaintiff does not assume that these provisions automatically create an independent damages action against the City.

# V. CLAIMS FOR RELIEF

## COUNT I — TITLE VII: RACE, COLOR, AND NATIONAL-ORIGIN DISCRIMINATION

42 U.S.C. § 2000e et seq.

75. Plaintiff realleges paragraphs 1 through 74.
76. Plaintiff asserts this count in the alternative, to the extent the Court determines that his separate City contractor relationship or the actual nature of the City's control constituted an employment relationship covered by Title VII.
77. Plaintiff alleges that the City subjected him to unequal treatment, exclusion from opportunities, heightened scrutiny, racially offensive comments, and other adverse treatment because of race and color.
78. Plaintiff alleges that the City's enforcement of service-hour and attendance requirements was inconsistent, including the differential treatment described in paragraphs 19 through 28.
79. Plaintiff alleges that the racially offensive comments and exclusionary conduct contributed to an intimidating and humiliating environment.
80. Plaintiff filed an administrative charge with the Equal Employment Opportunity Commission, Charge No. 511-2026-04348, naming the City of Tampa/The Green Team.
81. The EEOC issued a dismissal and notice of right to sue dated August 10, 2026. Plaintiff brings this action within the applicable 90-day period.

## COUNT II — TITLE VII: RELIGIOUS DISCRIMINATION AND FAILURE TO ACCOMMODATE

42 U.S.C. § 2000e(j) and § 2000e-2

82. Plaintiff realleges paragraphs 1 through 74.
83. Plaintiff asserts this count in the alternative, to the extent Plaintiff's relationship with the City qualifies as employment under Title VII.
84. Plaintiff held a sincerely religious belief that prevented him from participating in the Thanksgiving potluck or meal.
85. Plaintiff communicated his religious objection and requested to be excused from the meal.
86. Plaintiff alleges that the City and its supervisors failed to reasonably accommodate his request and instead subjected him to dismissive and mocking remarks.
87. Plaintiff alleges that the requested accommodation would have allowed him to refrain from the meal while continuing to perform his service responsibilities.
88. Plaintiff alleges that the City did not engage in a good-faith effort to determine whether the requested accommodation could be provided without undue hardship.

## COUNT III — EQUAL PROTECTION: INTENTIONAL RACIAL DISCRIMINATION UNDER 42 U.S.C. § 1983

Fourteenth Amendment

89. Plaintiff realleges paragraphs 1 through 74.
90. Defendant City of Tampa is a municipal government and acted through its officials, employees, supervisors, and agents under color of state law.
91. Plaintiff was entitled to equal protection of the laws regardless of whether he was classified as an employee, contractor, volunteer, or AmeriCorps participant.
92. Plaintiff alleges that City personnel intentionally treated him differently because of race and color, including through racially offensive comments, exclusion, unequal scrutiny, and differential enforcement of service requirements.
93. Plaintiff alleges that the treatment of other program members, including Vin Ding, supports an inference that service-hour requirements were not applied consistently.
94. Plaintiff alleges that the City's own Personnel Manual expressly prohibited City employees from directing offensive verbal or physical conduct based on race or other protected characteristics against any employee, citizen, or other person or member of the public.
95. Plaintiff relies on the City's written policy, its supervisory reporting requirements, and its responsibility for the Green Team program as relevant to municipal notice and accountability.
96. Plaintiff alleges that municipal liability must be established through a City policy, a widespread custom, a decision by an official with final policymaking authority, or a deliberately indifferent failure to supervise or enforce constitutional protections.
97. Plaintiff seeks discovery concerning the City's implementation and enforcement of its equal-opportunity policy, supervisory reporting practices, and handling of discrimination complaints involving Green Team participants.
98. Plaintiff seeks compensatory damages and appropriate declaratory or injunctive relief to the extent available under § 1983.

## COUNT IV — RACIAL DISCRIMINATION AFFECTING CONTRACTUAL RIGHTS

42 U.S.C. § 1981, enforced through 42 U.S.C. § 1983

99. Plaintiff realleges paragraphs 1 through 74.
100. Plaintiff alleges that he entered into a separate City contractor agreement and that the City issued him a Form 1099 in connection with the relationship.
101. Section 1981 protects the right of all persons to make and enforce contracts without racial discrimination.
102. Plaintiff alleges that the City impaired the benefits, privileges, terms, or conditions of his contractual relationship because of race, including through unequal treatment, exclusion from opportunities, discriminatory scrutiny, and adverse treatment affecting his ability to perform and benefit from the agreement.
103. Plaintiff alleges that the City acted under color of state law and that municipal liability must be established under the requirements applicable to § 1983.
104. Plaintiff relies on the separate City agreement and the actual nature of the relationship, not solely on the AmeriCorps Member Service Agreement.
105. Plaintiff seeks compensatory damages and appropriate equitable relief.

## COUNT V — TITLE VI: RACE, COLOR, AND NATIONAL-ORIGIN DISCRIMINATION IN A FEDERALLY ASSISTED PROGRAM

42 U.S.C. § 2000d

106. Plaintiff realleges paragraphs 1 through 74.
107. Plaintiff alleges that the Green Team was an AmeriCorps-assisted program and that the City received or administered federal financial assistance, directly or as a subrecipient, in connection with the program.
108. Plaintiff was a participant in the program.
109. Plaintiff alleges that the City, through personnel responsible for the program, intentionally subjected him to discrimination based on race and color in the administration and operation of the program.
110. The alleged discrimination included racially offensive conduct, exclusion from program opportunities, unequal enforcement of service requirements, and other differential treatment.
111. Plaintiff alleges that the City had authority and responsibility for significant aspects of the program's administration and supervision.
112. Plaintiff seeks relief available under Title VI, subject to proof that the City was a recipient or appropriate subrecipient of federal financial assistance and that the discrimination was intentional.

## COUNT VI — FLORIDA CIVIL RIGHTS ACT: RACE, COLOR, RELIGION, AND RETALIATION

Fla. Stat. §§ 760.01–760.11

113. Plaintiff realleges paragraphs 1 through 74.

114. Plaintiff asserts this count in the alternative, to the extent the Court determines that Plaintiff's actual relationship with the City constituted employment covered by the Florida Civil Rights Act.

115. Plaintiff alleges that the City subjected him to unequal treatment and harassment because of race and color, failed to accommodate his sincerely held religious beliefs, and retaliated against him after he opposed discriminatory treatment.

116. Plaintiff filed an EEOC charge concerning the conduct alleged in this action. The EEOC investigator advised Plaintiff that the EEOC had a work-sharing agreement with the Florida Commission on Human Relations and that the Florida agency would be notified.

117. Plaintiff did not receive a separate Florida Commission on Human Relations notice or case number. Plaintiff alleges that the EEOC charge was referred or cross-filed through the work-sharing process, to the extent confirmed by the administrative record.

118. Plaintiff does not represent that a separate FCRA determination was issued. Plaintiff requests that the Court consider the administrative record and applicable work-sharing arrangements in determining whether the FCRA administrative requirements have been satisfied.

# VI. DAMAGES AND RELIEF REQUESTED

119. As a direct and proximate result of Defendant's alleged conduct, Plaintiff suffered emotional distress, mental anguish, humiliation, damage to his reputation, loss of professional opportunities, and loss of the benefits and opportunities associated with his Green Team service.

120. Plaintiff alleges that the discriminatory and retaliatory conduct contributed to his resignation on December 5, 2025.

121. Plaintiff seeks the following relief to the extent authorized by applicable law:

a. A declaration that Defendant's conduct violated applicable federal and state law;

b. Compensatory damages for emotional distress, humiliation, reputational injury, and other proven losses;

c. Back pay, front pay, or other economic relief, if available;

d. Appropriate equitable relief, if available;

e. Injunctive relief requiring appropriate nondiscrimination, reporting, training, and enforcement measures, if legally available and supported by the evidence;

f. Costs of this action and attorney's fees authorized by law; and

g. Such other relief as the Court deems just and proper.

122. Plaintiff does not seek punitive damages against the City of Tampa where such damages are prohibited by law.

# VII. JURY DEMAND

123. Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**/s/ Jamelle Tucker**
Jamelle Tucker
Plaintiff, Pro Se
[Current mailing address]
[Telephone number]
[Email address]

Date: ____________________